**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| HEIDI RAMSEY, et al., | ) | CASE NO. 5:23-cv-86 |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| | ) | |
| FIRSTENERGY CORPORATION, et al., | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court is the parties' joint oral motion for the approval of settlement (including attorney's fees and costs) and dismissal of the case (*see* Doc. No. 28 (Minutes Order)), and plaintiffs' unopposed motion for attorney's fees. (Doc. No. 27 (Motion For Attorney's Fees).) A hearing regarding the motion was held on September 12, 2023. To support the motion for attorney's fees, counsel for the plaintiffs submitted timekeeping records under seal from two law firms, both of which worked on this case. (Doc. No. 29-2, 29-3 (Timekeeping Records).) Because the Court finds that the settlement represents a fair resolution of plaintiff's claim under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the joint motion for settlement is granted in part, the settlement is approved as modified, the motion for attorney's fees is denied as moot, and the case is dismissed with prejudice.

**I.    BACKGROUND**

On January 17, 2023, Heidi Ramsey ("Ramsey") filed this action, alleging that defendant FirstEnergy Corporation ("FirstEnergy") violated the FLSA by failing to pay her and other potential plaintiffs all of the overtime compensation to which they were entitled. (Doc. No. 1 ¶ 49

(Complaint).) On May 5, 2023, Ramsey filed an amended complaint which added a new defendant, InnoSource, Inc. ("InnoSource"), to her FLSA claim. (*See* Doc. No. 10 ¶ 5 (Amended Complaint).) Both defendants filed answers denying Ramsey's allegations and denying any liability. (*See generally* Doc. No. 14 (FirstEnergy's Answer); Doc. No. 21 (InnoSource's Answer).)

Ramsey worked for the defendants as a Customer Service Representative ("CSR") for three months in 2021. (Doc. No 10 ¶ 15.) Ramsey claims she was not paid for the time she spent waiting for her computer to turn on and for her computer applications to load. CSRs needed to use these computer applications to complete their job duties. The amount of time the CSRs spent on this "boot-up" time was disputed by the parties. Additionally, Ramsey claims she was not paid for the time she spent "studying outside of the classroom" to "pass tests in order to become [a] CSR[]." (*Id.* ¶ 42.)

The defendants deny that Ramsey is entitled to compensation under the FLSA as claimed. First, the defendants argue that the computers stayed on overnight so no "boot-up" was required by the CSRs when they began their morning shifts. Second, to the extent that a "boot-up" was required, the defendants contend that it amounted to a de minimis amount of time and, thus, did not require compensation under the FLSA. Finally, both defendants denied Ramsey's allegations related to time spent "studying outside the classroom" and any associated compensation. (*See* Doc. No. 14 ¶ 42; Doc. No. 21 ¶ 42.)

Prior to the case management conference and any motion for court-facilitated notice to other potential plaintiffs, the parties informed the Court that Ramsey and another former employee of defendant—De'ajia Robinson,[1] who similarly seeks unpaid wages—reached a settlement with

---

[1] Prior to the parties' request for a settlement hearing, De'ajia Robinson had not opted-in to the case and thus was not a party. Traditionally, the Court requires that separate plaintiffs file separate suits and pay separate filing fees. In consideration of the judicial efficiency of ruling on the completed settlement agreement on behalf of both plaintiffs collectively, however, the Court will not require De'ajia Robinson to file a separate suit.

the defendants and would no longer be pursuing the case on behalf of other similarly situated potential plaintiffs. The parties requested a settlement hearing, which was held on September 12, 2023. (Doc. No. 28.)

During the settlement hearing the parties summarized their settlement negotiations and the terms of the settlement agreement. Beginning with the process, the parties described the settlement negotiations as being at arm's length, over a period of weeks, and involving multiple rounds of offers. Turning to terms, the parties' proposed agreement provides each plaintiff with a single payment of $500 and provides $19,000 for attorney's fees. According to the parties, the $500 payment to each plaintiff equates to fifteen minutes of unpaid wages for five business days of each week of the plaintiffs' short employment tenure. According to plaintiffs' counsel, this payment is "well beyond the sum of the alleged unpaid wages plus liquidated damages available at law." (Doc. No. 29, at 1.[2]) The parties did not discuss how the $19,000 payment for attorney's fees was calculated, but plaintiffs' counsel subsequently submitted timekeeping record as evidence to support this payment. In exchange for these payments, the plaintiffs agreed to dismiss the present case and provide a release to the two named defendants and a related third entity (EverStaff).

## II. APPLICABLE LAW

"Employees are guaranteed certain rights by the FLSA, and public policy requires that these rights not be compromised by settlement." *Crawford v. Lexington-Fayette Urban Cnty. Gov't*, No. 06-299-JBC, 2008 WL 4724499, at *2 (E.D. Ky. Oct. 23, 2008). "The central purpose of the FLSA is to protect covered employees against labor conditions 'detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.'" *Id.* (quoting 29 U.S.C. § 202(a)) (further citation omitted).

---

[2] All page number references herein are to the consecutive page numbers applied to each individual document by the electronic filing system.

3

The provisions of the FLSA are mandatory and, except in two narrow circumstances, are generally not subject to bargaining, waiver, or modification by contract or settlement. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706, 65 S. Ct. 895, 89 L. Ed. 1296 (1945); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). The first exception involves FLSA claims that are supervised by the Secretary of Labor pursuant to 29 U.S.C. § 216(c). *Lynn's Foods*, 679 F.2d at 1353. The second exception, applicable here, encompasses instances where a federal district court approves the settlement of a suit brought pursuant to § 216(b) of the FLSA. *Id.* This exception can apply when a plaintiff pursues relief for a violation of only their own rights. *See, e.g.*, *Allen v. Shamrock Towing, Inc.*, No. 2:22-cv-1948, 2023 WL 5588617, at *2 (S.D. Ohio Aug. 29, 2023) (quoting *Camp v. Marquee Constr., Inc.*, No. 2:18-cv-831, 2020 WL 59517, at *1 (S.D. Ohio Jan. 6, 2020)) ("FLSA cases require court approval, even where only one litigant's rights are implicated.")

In reviewing the settlement of a plaintiff's FLSA claims, the district court must "'ensure that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime.'" *Rotuna v. W. Customer Mgmt. Grp. LLC*, No. 4:09-cv-1608, 2010 WL 2490989, at *5 (N.D. Ohio June 15, 2010) (quoting *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 719 (E.D. La. 2000) (further citation omitted)). The existence of a bona fide dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA. *Id.* (citing *Crawford*, 2008 WL 4724499, at *3). The Court should also consider the following factors: the risk of fraud or collusion; the complexity, expense, and likely duration of the litigation; the amount of discovery completed; the likelihood of success on the merits; and, the public interest in settlement. *Crawford*, 2008 WL 4724499, at *3 (citing

4

*Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)).

Where the settlement agreement proposes an award of attorney's fees, such fees must be reasonable. *See generally Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999) (citing *Blum v. Stenson*, 465 U.S. 886, 893, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)).

### III. ANALYSIS

#### A. Settlement of FLSA dispute

At the outset, the Court finds that the divergent views of the facts and the law presented a bona fide dispute that, had the parties not reached settlement, would have necessitated resolution by the Court and/or a jury. On one side, the plaintiffs alleged that they were required to turn on their computers and load their work applications before "they clock[ed] in and before [d]efendants start[ed] paying them." (Doc. No. 10 ¶ 43.) Additionally, plaintiffs allege they had to "study[] outside of the classroom" for new hire training and that they were not paid for this time. (*Id.* ¶ 42.) On the other side, defendants maintain that the CSRs' computers were continuously left on and did not require a boot-up at the beginning of shifts. Further, to the extent that the plaintiffs had any boot-up time, the defendants contend that this time was de minimis and not compensable under the FLSA. As to the alleged requirement for studying outside of the classroom, both defendants denied Ramsey's allegations. (Doc. No. 14 ¶ 42; Doc. No. 21 ¶ 42.) Taken together, this amounts to a bona fide dispute over liability and damages.

Having reviewed the terms of the settlement, the Court finds that the settlement represents a fair and reasonable resolution to the bona fide dispute between the parties. Each of the plaintiffs will receive a single payment of $500. This amount equals fifteen minutes of unpaid wages for five days of each week worked by the plaintiffs. The parties agree that this payment represents

over 100% of the plaintiffs' claims for unpaid wages.[3] (Doc. No. 29, at 1.) Beyond the settlement payments, this agreement was reached through arm's length negotiations among experienced counsel. Neither fraud nor collusion are present. At the settlement hearing, plaintiffs' counsel expressed concern regarding how the higher standard required for FLSA opt-in plaintiffs by recent Sixth Circuit precedent (*see Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003 (6th Cir. 2023)) would affect this case, where CSRs may have different job titles and may have worked for different corporate entities. This part of the agreement is fair and reasonable and weighs in favor of approval. While the Court is not in a position to assess the likelihood of success on the merits, the Court finds that the other relevant factors weigh in favor of approving the settlement.

### B. Reasonable attorney's fees and costs

Beyond examining the proposed payments to the plaintiffs and the process of settlement, district courts "must separately assess the reasonableness of any proposed award of attorney's fees and costs, even when they are negotiated as part of the settlement." *Ganci v. MBF Inspection Servs., Inc.*, No. 2:15-cv-2959, 2019 WL 4233128, at *2 (S.D. Ohio Sept. 6, 2019) (citing *Lakosky v. Discount Tire Co., Inc.*, No. 14-13362, 2015 WL 4617186, at *1 (E.D. Mich. July 31, 2015); *see also* 29 U.S.C. § 216(b) (mandating that courts "allow a *reasonable* attorney's fee to be paid by the defendant [to prevailing plaintiffs], and costs of the action." (emphasis added)). What constitutes reasonable attorney's fees is not defined by the FLSA, but the Sixth Circuit instructs district courts that the fee should be "adequately compensatory to attract competent counsel but avoid[] producing a windfall for lawyers." *Rembert v. A Plus Home Health Agency LLC*, 986 F.3d

---

[3] During the settlement hearing, neither party mentioned any compensation for the time Ramsey allegedly spent studying for the CSR new hire training outside of the classroom. (Doc. No. 10 ¶ 42.) This lack of information gives the Court pause, but the Court determines that the parties' lack of comment was accidental. The Court relies on plaintiffs' counsel's assertation that this settlement represents an amount "well beyond the sum of the alleged unpaid wages plus liquidated damages available at law." (Doc. No. 29, at 1.)

613, 616 (6th Cir. 2021) (quoting *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004) (internal quotation marks omitted)). If the allotted sum exceeds a reasonable amount, the district court may reject the settlement entirely. *See, e.g.*, *Wachtelhausen v. CCBCC, Inc.*, No. 2:20-cv-06234, 2021 WL 3847860, at *5 (S.D. Ohio Aug. 26, 2021) (rejecting an FLSA settlement because "the attorney's fees [were] unreasonable under the present facts[]"). The district court may also decrease the amount of attorney's fees to a reasonable sum prior to approving the FLSA settlement. *See, e.g.*, *Carr v. Bob Evans Farms, Inc.*, No. 1:17-cv-1875, 2018 WL 7508650, at *5 (N.D. Ohio July 27, 2018) (decreasing the attorney's fees within a settlement agreement); *Allen v. Shamrock Towing, Inc.*, No. 2:22-cv-1948, 2023 WL 5588617, at *5 (S.D. Ohio Aug. 29, 2023) (same).

While there are at least two permissible ways to calculate reasonable attorney's fees,[4] "the lodestar method yields a fee that is presumptively sufficient to achieve this objective." *Rembert*, 986 F.3d at 616 (quoting *Perdue v. Kenny A.*, 559 U.S. 542, 552, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010)). This method of calculation multiplies the reasonable billing rate by the number of hours "reasonably expended" on the matter for each legal professional. *Id*. The party seeking attorney's fees bears the burden of establishing the reasonableness of the hours billed and the rates charged for those hours. *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 617 (6th Cir. 2007) (citing *Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir. 1999)).

When determining the reasonable billing rate for a particular attorney, district courts approximate the "prevailing rate" an attorney of comparable skill, experience, and expertise would reasonably be able to charge "within the venue of record." *Van Horn v. Nationwide Prop. & Cas.*

---

[4] Plaintiffs used the lodestar method to calculate their attorney's fee request and did not mention the other method of calculating fees, the percentage of common funds. (*See generally* Doc. No. 27; Doc. No. 28.) Because the parties agreed to calculate the appropriate amount of attorney's fees using this method and its "presumptively sufficient" status within the Sixth Circuit, the Court will also use this method of calculation. *See Rembert*, 986 F.3d 613 at 616.

*Ins. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011) (quoting *Gonter*, 510 F.3d at 618)). As inputs to this calculation, "[a] district court may rely on a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." *Id*. at 499. If a party seeks out-of-market rates, that party bears the burden of establishing why out-of-market counsel was necessary in the case. *See id*. ("[The party seeking attorney's fees] bore the burden of establishing the need to seek out-of-town counsel[.]").

When determining the amount of time "reasonably expended" on a particular matter, courts may start with the number of hours provided by counsel and then reject claimed hours to which that attorney is not entitled. *See, e.g.*, *Rembert*, 986 F.3d at 617. If claimed hours are rejected, however, "[t]he district court should state with some particularity which of the claimed hours the court is rejecting, which it is accepting, and why." *Id*. (quoting *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1193 (6th Cir. 1997)).

Here, the settlement agreement calls for a single payment to plaintiffs' counsel for $19,000.[5] Counsel submitted three documents supporting this recovery of attorney's fees: (1) a declaration which details Drew Legando's ("Mr. Legando") experience and qualifications; (2) timekeeping records for his work on this case; and (3) timekeeping records from Mr. Legando's co-counsel attorneys and a paralegal at the Shavitz Law Group. Comparable cases, evidence from the Ohio State Bar Association, and the Court's experience suggest that this payment exceeds a reasonable award of attorney's fees in this case. As such, the Court will modify the amount of attorney's fees to a reasonable sum.

---

[5] Two law firms represented the plaintiffs in this matter: Merriman Legal, LLC (more specifically Mr. Legando) and the Shavitz Law Group. During the settlement hearing, Mr. Legando did not state how the proposed attorney fee of $19,000 would be divided with his co-counsel. Notwithstanding this lack of information, whatever private arrangement the attorneys reach amongst each other will occur *after* the settlement payment from defendants. For the purposes of this opinion, the Court shall treat the proposed $19,000 payment as a single amount to which attorneys from both firms contributed.

1. *Work completed by Drew Legando*

Beginning with the work completed by plaintiffs' lead counsel, Mr. Legando, his declaration states that he has been a licensed attorney in Ohio for fifteen years, he is admitted to practice law in numerous federal courts, he is a founding partner at his law firm, and he has successfully resolved multiple FLSA cases, including cases within the Northern District of Ohio. (*See* Doc. No. 27 ¶ 2.) Given his years of experience, Mr. Legando states that his billing rate for this case was $764 per hour. (*Id*. ¶ 3.) Mr. Legando supports this determination by referencing the "Adjusted Laffey Matrix." (*Id*. ¶¶ 3–4.) Mr. Legando does not explain this matrix, attach it to his filings, or provide any citation for the Court to review the matrix's methodology for calculating reasonable attorney's fees. (*See generally id*.) Instead, Mr. Legando merely states, without citation, that "[i]n the past, I have submitted my lodestar for fee-approval proceedings using the Adjusted Laffey Matrix, which courts have accepted." (*Id.* ¶ 3.)

The Court is not familiar with this particular fee matrix. In fact, the Court could only find one indirect reference to its use in the Northern District of Ohio. *See Project Vote v. Blackwell*, No. 1:06-cv-1628, 2009 WL 917737, at *12 (N.D. Ohio Mar. 31, 2009). In *Project Vote*, the party requesting attorney's fees did not specifically state that it was using the Adjusted Laffey Matrix, but the court noted that it was "somewhat concerned to realize that many of the rates requested by Plaintiffs are quite similar to the rates deemed reasonable for those practicing before courts in the District Court for the District of Columbia." *See id*. (citing http://www.laffeymatrix.com (last visited Mar. 30, 2009)). The district court ultimately granted the prevailing party's request for attorney's fees, but at a lower rate. *See id*. at *14.

The Court does not know if the website cited in *Project Vote* is an official, or even up-to-date, version of the Adjusted Laffey Matrix. The Court notes, however, the hourly rate provided by Mr. Legando ($764) exactly matches what the website lists for an attorney with his experience

9

(11–19 years) for work done between June 1, 2021 and May 30, 2022. *See* http://www.laffeymatrix.com/see.html (last visited Oct. 5, 2023). Additionally, the website makes clear that the matrix is a tool for "assessing legal fees in the *Washington-Baltimore area*[.]" http://www.laffeymatrix.com/index.html (last visited Oct. 5, 2023) (emphasis added).

With the sparse information in front it, the Court finds that the Adjusted Laffey Matrix is not a relevant tool for calculating reasonable attorney's fees for this case filed in the Northern District of Ohio and will not consider it. According to the amended complaint, Ramsey and both defendants are citizens of Ohio. (*See* Doc. No. 10 ¶¶ 14, 18, 21.) Additionally, Ramsey worked for the defendants in the state of Ohio. (*Id.* ¶ 14.) More to the point, Mr. Legando is an Ohio attorney without any clear connection to Baltimore or Washington D.C. *See, e.g.*, https://www.supremecourt.ohio.gov/attorneysearch/#/84209/attyinfo (last visited Oct. 5, 2023) (listing a Cleveland address for Mr. Legando); https://www.teamlgm.com/team/attorneys/drew-legando (last visited Oct. 5, 2023) (same). And, even if Mr. Legando did have some connection to Washington D.C., it was Mr. Legando's obligation to prove why he was entitled to out-of-market rates for this case. Because FLSA cases are regularly brought by competent counsel located within this district and Mr. Legando failed to show any reason why this case required counsel from outside of Ohio, the proper method for calculating a reasonable billing rate for the lodestar method is to survey the local area.

Mr. Legando did not provide the Court with any evidence regarding the current billing rate for attorneys within Ohio. Notwithstanding this lack of evidence, the Court finds that the Ohio State Bar Association's Report ("OSBA Report"), *The Economics of Law Practice in Ohio in 2019*, A Desktop Reference, to be a particularly helpful resource. Other Ohio courts also rely on this resource for calculating reasonable attorney's fees. *See, e.g.*, *Gilbo v. Agment LLC*, No. 1:19-

cv-767, 2020 WL 6826369, at *2 (N.D. Ohio Nov. 20, 2020) (relying on the report to calculate reasonable attorney's fees); *Swickheimer v. Best Courier, Inc.*, No. 2:19-cv-3706, 2021 WL 6033682, at *4 (S.D. Ohio Dec. 21, 2021) (same); *Smith v. Hillstone Healthcare, Inc.*, No. 2:17-cv-1075, 2020 WL 13659063, at *3–4 (S.D. Ohio Aug. 7, 2020) (same). According to that report, attorneys working in Ohio, with fifteen years of legal experience, charged their clients $273.00 per hour on average. OSBA Report, at 44.

The report has limitations. Of particular note for the present case, the underlying data for the report was collected during April and May of 2019. *Id*. at 8. Since that time, there has been significant inflation within the United States. *See, e.g.*, https://www.clevelandfed.org/center-for-inflation-research/inflation-charting (last visited Oct. 5, 2023). According to Mr. Legando's timekeeping records, all of his work in this case occurred in 2023. (*See generally* Doc. No. 29-1.) In light of the general inflation within the United States since the OSBA Report data was collected, the Court shall consider $350 an hour to be a reasonable rate for the legal services Mr. Legando provided in this case.[6] In the Court's experience, this is a fair rate. *See also McMasters v. Captain Friedt Tower Servs., LLC*, No. 5:22-cv-107, 2022 WL 17104543, at *5 (N.D. Ohio Nov. 21, 2022) (granting plaintiff's request for attorney's fee rate of $375 an hour); *Becker v. Sam Gildersleeve & Son Plumbing, Inc*., No. 1:20-cv-2359, 2021 WL 4348260, at *4 (N.D. Ohio Sept. 24, 2021) (finding $325 an hour to be "reasonable for a plaintiff's employment attorney in Northeast Ohio").

---

[6] According to an inflation calculator provided to the public by the Federal Reserve Bank of Minneapolis, $273 in 2019 dollars is worth a little under $325 today. *See* https://www.minneapolisfed.org/about-us/monetary-policy/inflation-calculator (last visited Oct. 5, 2023). The U.S. Bureau of Labor Statistics provides for a similar level of inflation over this period of time. *See* https://data.bls.gov/cgi-bin/cpicalc.pl (last visited Oct. 5, 2023). Recognizing that inflation effects different goods and services differently, and the importance of attracting skilled counsel (such as Mr. Legando) to matters such as this, the Court deems $350 per hour to be a reasonable billing rate for Mr. Legando in the present case. Of course, this exercise is not an exact science; it is an approximation of the value to attract competent counsel without providing a "windfall" for attorneys. *See Van Horn*, 436 F. App'x at 498 ("The appropriate rate, therefore, is not necessarily the exact value sought by a particular firm, but is rather the market rate in the venue sufficient to encourage competent representation.") (quoting *Gonter*, 510 F.3d at 618).

According to the timesheets submitted by Mr. Legando, he spent 18.7 hours on this case. The Court has reviewed Mr. Legando's entries and does not find any reason to reduce his requested hours. Mr. Legando reasonably expended 18.7 hours working on this matter at a reasonable rate of $350 an hour, totaling $6,545.00 in legal services rendered. The Court approves $6,545.00 in legal fees for Mr. Legando.

2. *Work completed by co-counsel at the Shavitz Law Group*

The supporting evidence submitted by Mr. Legando on behalf of his co-counsel at the Shavitz Law Group fails to provide key information to the Court, which complicates the calculation of a reasonable billing rate.[7] The cover page submitted with the Shavitz Law Group's timesheets contains the names of the attorneys (Gregg Shavitz, Loren Donnell, and Michael Palitz) and paralegal (Serena Eifert) that worked on this case. (Doc. No. 29, at 1.) Nowhere in the filing does the Shavitz Law Group provide *any* information on these professionals outside of their status as either a lawyer or a paralegal. (*See generally id.*) Of particular note, the filing does not state the years of experience for any of the listed individuals, nor does it provide any other credential (such as their expertise in successfully managing FLSA cases).[8] (*See id.*) The filing also does not explicitly state what rate each professional requests, but the rates can be calculated through the information provided in the timekeeping entries.[9] Gregg Shavitz requests an hourly rate of $700;

---

[7] Beyond its omissions, the Shavitz Group's submission also contained numerous errors. The filing contained multiple typos (*see* Doc. No. 29-2, at 4, 5, 6), undefined acronyms, the incorrect initials for one of the attorneys (*see generally id.* (referring to Loren Donnell as "lo" instead of "LD")), and inconsistent entries. (*See, e.g.*, *id.* at 4 (Mr. Palitz billing .2 hours on April 19, 2023 to "confer with team . . ." but no other attorney billing for that meeting); *id.* at 6 (same for a June 30 meeting); *id.* (same for a July 7 meeting).) The Court expects counsel to review submissions for these types of errors and inconsistencies prior to filing.

[8] The Court is not required to conduct additional research beyond the parties' filings to find supporting evidence. Nonetheless, the Court attempted to locate the years of experience of the billing legal professionals at the Shavitz Law Group via their website. *See* https://shavitzlaw.com/people/ (last visited, Oct. 5, 2023). As far as the Court can tell, their website seems to be malfunctioning and does not display the biographical information for their employees, such as their years of experience. *See, e.g.*, https://shavitzlaw.com/people/gregg-i-shavitz/ (last visited Oct. 5, 2023).

[9] For each timekeeping entry, the Shavitz Law Group provided the following information: the date of work, a narration of the work completed, the time spent on that task, the total charge for the task, and the initials of the charging legal

Loren Donell, $575; Michael Palitz, $575; and Serena Eifert, $150. (*See generally id*.) Because it is the requesting party's obligation to prove that their request for attorney's fees is reasonable, the Shavitz Law Group's paltry showing is inadequate and grounds to reject the settlement. *See, e.g.*, *Wachtelhausen*, 2021 WL 3847860, at *5 (stating that when a party only "provides names and not positions" of attorneys that worked on a case it is "impossible for the Court to determine if the charged hourly rates are reasonable[]").

The Court finds these omissions unwelcome, but not fatal to the settlement agreement. Recognizing the effort that went into reaching this settlement agreement and the benefit it will provided to the plaintiffs in this case, the Court will not penalize the injured parties by denying the settlement agreement at this stage. Similar to the calculations for Mr. Legando's reasonable billing rate, the Court will rely on other evidence to calculate a reasonable rate for the legal professionals at the Shavitz Law Group.

As stated above, this is a FLSA case where the violations appear to have exclusively occurred in Ohio. Despite being based in Florida (*see* Doc. No. 29-2, at 1), the legal professionals at the Shavitz Law Group did not provide any information to the Court showing why they should be entitled to an hourly rate greater than those charged in Ohio. *See Van Horn*, 436 F. App'x at 498. Thus, for the same reasons discussed relative to Mr. Legando, the Shavitz Law Group did not carry their burden to receive a higher, out-of-market, rate for their services in this case. Instead, the Court will determine the rate an attorney could reasonably charge in Ohio to calculate the reasonable attorney's fees for the legal professionals of the Shavitz Law Group.

---

professional. (*See generally* Doc. No. 29-2.) The Court was able to use this information to calculate the rates for each employee. For example, on February 28, 2023 "mp" (*i.e.*, Michael Palitz) charged $115.00 for a task that took him .2 hours to complete. (*Id*. at 4.) Multiplying that dollar amount charged by five, to equal one hour, Michael Palitz's requested rate is $575 dollars an hour. (*See id*.)

13

The Court finds the OSBA Report helpful for this analysis as well. Beyond the table for attorney's fees based on a lawyer's years of legal experience (*see* OSBA Report, at 44), the report also breaks out the billing rates by area of work. *Id.* at 45. While the Court generally prefers to use an attorney's years of legal experience to estimate their reasonable hourly rate, this alternative method is permissible. *See Swickheimer*, 2021 WL 6033682, at *4 (considering, among other factors, the type of dispute to determine appropriate attorney's fees). For attorneys working on labor matters, such as this one, the mean billable rate was $227 an hour in Ohio. OSBA Report, at 45. For paralegals and legal assistants, which the report considered as a single group (*see id.* at 7), the only metrics the OSBA Report provides are sorted by years of experience and geographical location. *See id.* at 48. As stated above, the Court does not know how long Ms. Eifert has worked as a paralegal. (*See* Doc. No. 29.) Giving Ms. Eifert the benefit of the doubt, the Court shall consider her to have over 10 years of experience (*i.e.*, the highest tier) and determines the mean billable rate for a similarly situated Ohio paralegal to be $110 an hour. OSBA Report, at 48. Applying the same inflation multiplier used to adjust Mr. Legando's hourly rate (28.2%), this equates to a reasonable hourly rate of $291.01 for the three attorneys and $141.02 for the sole paralegal.

According to the timesheets submitted by Mr. Legando on behalf of the Shavitz Law Group, the three attorneys spent 27 hours on this case and Ms. Eifert spent a total of 4.8 hours. (*See generally* Doc. No. 29-2.) The Court has reviewed these time entries and does not find any reason to reduce the requested hours. The three attorneys reasonably expended 27 hours working on this matter at a reasonable rate of $291.01 an hour, totaling $7,857.27 in legal services rendered. Ms. Eifert reasonably expended 4.8 hours at a reasonable rate of 141.02 per hour, totaling $676.90. Collectively, the Court approves $8,534.17 in legal fees by the Shavitz Law Group.

3. *Costs*

The plaintiffs also seek to recover costs, which is permitted under the FLSA. *See* 29 U.S.C. § 216(b). According to Mr. Legando's declaration, plaintiff seeks $642 dollars in costs: $402[10] for the filing fee and an additional $240 for the pro hoc vice admission costs of his co-counsel. (Doc. No 27 ¶ 7.) The Court approves the recovery of these costs and adds them to the settlement total.

IV. **CONCLUSION**

For the foregoing reasons, the Court approves in part the parties' joint oral motion for approval of settlement (including, in part, the attorney's fees and costs requested) (Doc. No. 48) and denies plaintiff's written motion for attorney's fees (Doc. No. 27) as moot. The settlement agreement is modified to pay $500 to each plaintiff (as proposed by the parties) and $15,721.17 in attorney's fees and costs (as found reasonable by the Court) for a total of $16,721.17. The claims in plaintiffs' complaint are dismissed with prejudice, and this case is closed. The Court retains jurisdiction over this action to enforce the terms of the settlement.

**IT IS SO ORDERED**.

Dated: October 13, 2023

**HONORABLE SARA LIOI
CHIEF JUDGE
UNITED STATES DISTRICT COURT**

---

[10] In his declaration, Mr. Legando requests $642 in expenses, but incorrectly states that the filing fee was only $400 dollars. (*See* Doc. No 27 ¶ 7.) The filing fee was actually $402 (*see* Doc. No. 1), but the total amount requested by Mr. Legando is correct. (*See* Doc. No 27 ¶ 7.)